UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS PARRA,<br><br>              Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Case No.  1:21-cv-01798-CDB<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION FOR FURTHER PROCEEDINGS UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>(Docs. 21, 23) |

Juan Carlos Parra ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court on the certified administrative record (Doc. 16) and the parties' briefs, which were submitted without oral argument.  (Docs. 21, 23).[1]  Plaintiff asserts the Administrative Law Judge ("ALJ") failed to fully evaluate relevant evidence and adequately explain her finding that Plaintiff did not meet the requirements of Listing 11.09A.  (Doc. 21 at 3, 13-17).  Moreover, Plaintiff contends the ALJ failed to develop the record.  *Id*. at 3, 17-19.  Plaintiff requests the decision of the ALJ be vacated and the case be remanded for further proceedings including a *de*

---

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 10).

*novo* hearing and a new decision. *Id*. at 19.

## I.  PROCEDURAL HISTORY

### A. Administrative Proceedings

On August 31, 2017, Plaintiff protectively applied for disability insurance benefits. (Administrative Record ("AR") at 25, 150, 378). On September 10, 2018, Plaintiff protectively applied for supplemental security income benefits. *Id*. at 25, 382. In both applications, Plaintiff alleged a period of disability beginning on November 10, 2016, and was 36 years old on the alleged disability onset date. *Id*. at 25, 151. Plaintiff claimed disability due to issues with depression, anxiety, herniated disc, insomnia, low vision, left leg weakness, coordination problems, bowel movement problems, bladder movement problems, issues with two back surgeries, and multiple sclerosis ("MS"). *Id*. at 150-51, 164-65.

The Commissioner denied Plaintiff's application initially and again on reconsideration. *Id*. at 150-207, 210-47, 253-60. Plaintiff submitted a written request for a hearing by an ALJ. *Id*. at 272-73. On March 26, 2021, Plaintiff represented by counsel, appeared by telephone before ALJ Diane S. Davis. *Id*. at 105-149. Vocational expert ("VE") James Miller also testified at the hearing via telephone. *Id*. at 112, 142-48.

### B. Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### C. The ALJ's Decision

On April 21, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. (AR at 27-42). The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520(a). *Id*. The ALJ found Plaintiff had not engaged in substantial gainful activity since November 10, 2016, the alleged disability onset date (step one). *Id*. at 30. The ALJ held Plaintiff possessed the following severe impairments: degenerative disc disease of the lumbar spine, MS, depression, and anxiety (step two). *Id*. at 30.

Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). *Id*. at 31. Specifically, the ALJ considered Listing 1.15 (Disorders of the skeletal spine), and 11.09 (MS). *Id*. The ALJ noted Listing 1.15 requires:

> "a disorder resulting in compromise of nerve root(s), with evidence of neuroanatomic distribution of one or more symptoms of pains, paresthesia, or muscle fatigue; and radicular distribution of neurological signs of muscle weakness; nerve root irritation, tension, or compression; sensory changes; or decreased deep tendon reflexes; and a documented medical need for an assistive device involving the use of both hands, inability to use both upper extremities."

*Id*. The ALJ found Plaintiff reported having low back pain and left leg pain. *Id*. However, the ALJ determined diagnostic testing did not show any significant compression of nerve roots and Plaintiff's physical examinations did not reveal the requisite motor and sensory deficits. *Id*. The ALJ held the requirements of Listing 1.15 were not satisfied.

Next, the ALJ analyzed if Listing 11.09 applied to Plaintiff's claim. *Id*. The ALJ noted Listing 11.09 requires:

> "disorganization of motor function in two extremities resulting in extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, or marked limitation in physical functioning, with marked mental limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing self."

*Id*. The ALJ reiterated that the evidence showed that Plaintiff did not have the requisite motor deficits. *Id*. The ALJ found that prior to the initiation of medication for MS in December 2018, Plaintiff was "noted to arise from a seated position easily, and able to walk at normal speech [*sic*] back to the exam." *Id*. at 31-32. The ALJ determined while Plaintiff had some balance issues at a physical therapy visit in January 2021, "his gait is good with good balance; he had occasional minimal sway with rapid [self-correction]." *Id*. at 32. Further, the ALJ found Plaintiff did not have marked limitation in any of the domains of mental functioning and Plaintiff reported having the ability to take care of personal needs and perform his activities of daily living without assistance. *Id*.

Accordingly, the ALJ held the requirements of Listing 11.09 were not satisfied. *Id*.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). *Id*. at 33-34. The ALJ found that from the alleged onset date of November 10, 2016, through June 9, 2019, Plaintiff retained the RFC:

> "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), such that he is limited to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around dangerous, unprotected major manufacturing machinery; avoid concentrated exposure to extreme heat; use a cane when walking long distances or on uneven terrain; understand, remember, and carry out simple, routine tasks that can be learned and mastered in up to 30 days or less, with reasoning level of three or less; and, at such levels, can maintain concentration, persistence, and pace within customary norms, make simple work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards."

*Id*. at 33. Next, the ALJ determined that from June 10, 2019, to the present, Plaintiff retained the RFC:

> "to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), such that he is limited to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around dangerous, unprotected major manufacturing machinery; avoid concentrated exposure to extreme heat; use a cane to get to and from the workstation, and when walking long distances or on uneven terrain; understand, remember, and carry out simple, routine tasks that can be learned and mastered in up to 30 days or less, with reasoning level of three or less; and, at such levels, can maintain concentration, persistence, and pace within customary norms, make simple work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.."

*Id*. at 33-34.

Although the ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, the ALJ concluded that Plaintiff's statements

concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. at 34. The ALJ again noted Plaintiff reported having the ability to take care of personal needs and perform his own activities of daily living. *Id*. The ALJ found Plaintiff stopped working for a non-disability reason. *Id*. at 34-35.

Thereafter, the ALJ reviewed Plaintiff's treatment records. *Id*. at 34-37. The ALJ acknowledged Plaintiff tested positive for MS. *Id*. at 35. However, the ALJ determined despite some findings of tenderness, reduced range of motion, lower extremity weakness, reduced left upper extremity hand grip strength, hyperreflexia, difficulty with tandem walking, walking with a cane, slow gait, and "brief" hospitalizations, Plaintiff's medical record, and the record overall demonstrated he was not disabled from all work. *Id*. at 35-40. The ALJ found persuasive the opinions of Dr. Wagner and state agency consultants that from the alleged onset date through June 2019, Plaintiff was limited to light work. *Id*. at 38-39.

The ALJ determined that Plaintiff was unable to perform any past relevant work (step four), but could perform a significant number of other jobs in the national economy (step five). *Id*. at 40-42. The ALJ concluded Plaintiff has not been under a disability as defined in the Act. *Id*. at 42.

On October 22, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1-6. Plaintiff filed this action on December 20, 2021, seeking judicial review of the denial of his application for benefits. (Doc. 1). The Commissioner lodged the administrative record on July 1, 2022. (Doc. 16). Plaintiff filed an opening brief on November 10, 2022. (Doc. 21). On December 27, 2022, Defendant filed a responsive brief. (Doc. 23).

## II.   LEGAL STANDARD

### A. The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual

is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[2] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).  Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2).  *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe.").  The RFC is not a medical opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible

to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   LEGAL ISSUES

Plaintiff asserts the ALJ failed to fully evaluate relevant evidence and adequately explain her finding that Plaintiff did not meet the requirements of Listing 11.09A.  (Doc. 21 at 3, 13-17). Plaintiff separately argues the ALJ failed "to fully and fairly develop the record and obtain an opinion from an examining internist regarding the functional limits resulting from 'worsening' MS, rendering the assessed RFC unsupported." *Id*. at 3, 17-20.

### IV.   DISCUSSION

**A. Step Three**

At step three of the sequential evaluation process, an ALJ must consider whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment in the Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific findings as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1996).  Thus, if the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry.  20 C.F.R. § 416.920(d); *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that he has an impairment that meets or equals a listed impairment. *Burch*, 400 F.3d at 683; *Zebley*, 493 U.S. at 530 (noting the burden of proof rests with the claimant to provide and identify medical signs and laboratory findings that support all criteria for step three impairment determination); *Kennedy v. Colvin*, 783 F.3d 1172, 1176 (9th

8

Cir. 2013). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Id*. (quoting 20 C.F.R. § 404.1526). "A generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100; *see* 20 C.F.R. § 416.926.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis*, 236 F.3d at 512. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet or equal a listed impairment. *Id*. However, an ALJ does not have "to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Plaintiff challenges the ALJ's finding at step three of the sequential evaluation that Plaintiff's "severe impairment of MS" did not satisfy the requirements of Listing 11.09A. (Doc. 21 at 13). Plaintiff asserts he meets "the *applicable limitation* in his claim," an "inability to maintain balance in a standing portion means that you are unable to maintain an upright position while standing or walking with the assistance of another person, or an assistive device, such as a walker, two crutches, or two canes." *Id*. at 14 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00D2) (emphasis added).

Plaintiff's argument is without merit. There is no "applicable limitation" in Listing 11.09A. Instead, Plaintiff must "provide and identify medical signs and laboratory findings that support *all criteria* for step three impairment determination." *Zebley*, 493 U.S. at 530 (emphasis added). Listing 11.09A sets forth the following criteria: "disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09A. Thus, Plaintiff must meet both 11.00D1 and 11.00D2.

Listing 11.00D1 states disorganization of motor function is defined as "interference, due

to your neurological disorder, with movement of two extremities, i.e., the lower extremities, or upper extremities...By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00D1.

Here, the ALJ found that Plaintiff "did not have the requisite motor defects" to meet 11.00D1. AR at 31. As noted above, the ALJ reviewed the evidence relevant to Listing 1.15 (disorders of the skeletal spine). *Id*. The objective medical evidence showed that while Plaintiff had pain, numbness, weakness, and lack of mobility in one extremity (left leg), he presented no "requisite motor defects" with any other extremity. *See id*. at 552, 555-59, 561-65, 567-68, 570-71, 573-74, 576-77, 579-80, 747-48, 1709, 1711, 1714, 1805, 1822.

Next, the ALJ identified a December 2018 examination. *Id*. at 31-32. The December 2019 examination noted Plaintiff complained of "slight left leg weakness." *Id*. at 1073. The examination showed Plaintiff was able to get up out of his chair, could walk at normal speed back to the exam room, possessed a normal gait, and could walk back and forth across the room without his cane. *Id*. at 1073-74. Plaintiff's "[strength was] 5/5 in the bilateral upper and lower extremities" and "[p]erhaps some minimal, subtle weakness in the left leg compared to the right." *Id*. at 1076. The ALJ also considered a January 2021 physical therapy visit. *Id*. at 32. The physical therapy session demonstrated Plaintiff had "some balance issues" but his "[g]ait is good with good balance," he had minimal sway with rapid correction, and he possessed greater mobility in his right leg compared to his left. *Id*. at 1789.

Plaintiff claims the ALJ ignored neurological evidence of motor dysfunction that placed him in a wheelchair and reliant on a walker is unavailing. (Doc. 21 at 14-16) (citing AR. 766, 777, 790, 799, 808, 810-11, 890, 974, 977, 981, 986, 1041, 1192, 1451, 1549 1550-51, 1586, 1605, 1638, 1689, 1691, 1692, 1702, 1796). Plaintiff's cited evidence shows disorganization in only one extremity: that he displayed chronic pain, numbness, weakness, and decreased position sense in his left leg. The record noted Plaintiff possessed a range of 5/5 to 2/5 strength in his left lower extremity. Plaintiff had "mild ataxia…left greater than right," his foot taps were "impaired worse on the left" and had difficulty walking on his left foot due to dragging, spasticity of the left

10

1  lower extremity, and weakness. AR at 766-767, 790, 799, 808. 810-11, 890, 975, 977, 981, 986,
2  1041-42, 1192, 1451, 1549 1550-51, 1586, 1605, 1689, 1691, 1692, 1702, 1796. Moreover, the
3  record shows, when he did use a walker and/or wheelchair, Plaintiff did so because of his left leg.
4  *See id*. at 747-48, 810, 986, 1074, 1549, 1586, 1605, 1638, 1711.

5  In contrast, Plaintiff's cited evidence did not demonstrate he suffered disorganization in
6  another extremity. The record shows Plaintiff had "[d]enied any other extremity weakness or
7  sensory loss" and had continuously displayed 5/5 to 4/5 strength in both upper extremities, and
8  5/5 to 4/5 strength in the right lower extremity. *Id*. Thus, the evidence does not support a finding
9  of disorganization of motor function in two extremities pursuant to 11.00D1. Accordingly, the
10 Court finds that substantial evidence supports the ALJ's conclusion at Step Three that Plaintiff's
11 MS did not meet or medically equal the requirements of Listing 11.09A.

12 **B. The ALJ's Duty to Develop the Record**

13 The Ninth Circuit holds that an ALJ has a special duty to fully and fairly develop the
14 record and to assure that a claimant's interests are considered, even when the claimant is
15 represented by counsel. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *see*
16 *Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (this duty is especially important when a
17 claimant suffers from a mental impairment). However, it remains the claimant's "duty to prove"
18 that he is disabled and entitled to benefits. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir.
19 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a).
20 The ALJ's duty to further develop the record is triggered only when there is ambiguous evidence
21 or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d
22 at 459-60. This duty may require that the ALJ obtain additional information by, *inter alia*,
23 contacting treating physicians, scheduling consultative examinations, or calling a medical expert.
24 20 C.F.R. §§ 416.912(e)-(f), 416.919a.

25 Whether such ambiguity or inconsistency is present depends on the facts of each case.
26 *Molina v. Berryhill*, No. 2:17-cv-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018).
27 "There must be some objective evidence suggesting a condition that would have a material
28 impact on the disability decision. *Id*. (citing *Smolen*, 80 F.3d at 1288 and *Wainwright v. Sec'y pf*

1   *Health & Human Servs.*, 939 F.2d 680. 682 (9th Cir. 1991)).  Such objective evidence may

2   include evidence that a condition has worsened.  *Goodman v. Berryhill*, No. 2:17-cv-01228 CKD

3   2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019).

4         Plaintiff asserts the ALJ erred in failing to develop the record to assist in rendering

5   Plaintiff's RFC.  (Doc. 21 at 17-18).  Plaintiff argues that despite the ALJ conceding Plaintiff's

6   MS "worsened" in 2019, no further examination occurred and instead, the ALJ "played doctor"

7   when she interpreted "raw medical data" and invented a new RFC.  *Id*. at 17-19.  Defendant

8   counters that further development of the record was not necessary because Plaintiff had not

9   shown the evidence was unambiguous.  (Doc. 23 at 6).  Further, Defendant argues the ALJ did

10  not "interpret raw medical data" but looked at unambiguous evidence to reach a reasonable

11  conclusion about Plaintiff's limitations.  *Id*. (citing *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir.

12  2022)) (an ALJ is "capable of independently reviewing and forming conclusions about medical

13  evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot

14  work.").

15        The ALJ determined since June 2019, Plaintiff had greater limitations due to his physical

16  conditions than as determined by state agency consultants.  AR. at 39.  The ALJ did not rely on a

17  physician's opinion that addressed Plaintiff's work limitations.  Indeed, no medical opinion

18  addressed Plaintiff's functional capabilities after his MS had worsened.  *Id*. at 35, 39.  The ALJ

19  instead relied on a June 2019 treatment note indicating Plaintiff was using a wheelchair (*id*. at

20  1605), a July 2019 examination that noted Plaintiff had a sickly appearance (*id*. at 1805), a

21  November 2019 treatment note stating Plaintiff's MS had "progressively worsened" (*id*. at 1547),

22  and a treatment provider advising Plaintiff to continue using a cane (*id*. at 1825).  *Id*. at 39.

23        From these treatment records, the ALJ developed a second RFC limiting Plaintiff to

24  perform sedentary work.  *Id*. at 33-34, 39.  However, these records do not provide a sufficient

25  indication of Plaintiff's functional limitations.  Rather, the Court finds the medical records

26  reviewed by the ALJ provided no indication of the impact of Plaintiff's "progressively

27  worsening" condition on his ability to perform sedentary work or even work on a function-by-

28  function basis.  Moreover, the ALJ's finding that Plaintiff should continue to use a cane, used a

1  wheelchair, had a "sickly appearance" and that his condition progressively worsened were
2  ambiguous—some of which observations (if further developed) could support a more restrictive
3  RFC than what the ALJ proffered.  At bottom, it is clear the ALJ formulated Plaintiff's second
4  RFC based on her interpretation of four treatment notes and not on medical judgment, which is
5  improper.  *See e.g., Rondan v. Halter*, 8 F. App'x 724, 725 (9th Cir. 2001) (an ALJ's duty to
6  further develop the record was triggered by the lack of a medical opinion that included
7  consideration of MRIs that Plaintiff had undergone); *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir.
8  1993) ("Without a personal medical evaluation it is almost impossible to assess the residual
9  functional capacity of any individual."); *Howell v. Kijakazi*, No. 20-cv-02517-BLM, 2022 WL
10 2759090, at *10 (S.D. Cal. Jul. 14, 2022) (an ALJ's duty to further develop the record was
11 triggered when the ALJ rejected plaintiff's treating physician's opinion, and the record did not
12 contain an opinion or interpretation of plaintiff's functional limitations following the deterioration
13 of plaintiff's medical condition).

    In light of the foregoing, the Court concludes that the ALJ erred by not further developing
the record and that the ALJ's second RFC determination is not supported by substantial evidence.

## V.    REMAND

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)
or to order immediate payment of benefits is within the discretion of the district court.  *Harman v.
Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an
administrative agency determination, the proper course is to remand to the agency for additional
investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v.
Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of
> disability can be made, and (3) it is clear from the record that the ALJ would be required
> to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose
would be served by further administrative proceedings, or where the record is fully developed.

13

*Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).

Here, the ALJ relied on isolated, anecdotal comments and notations, and not any medical opinion to develop Plaintiff's second RFC. Because the ALJ failed to further develop the record, remand is appropriate.

### VI.   CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 21) is GRANTED to the extent for further development of the record as set forth above;
2. The decision of the Commissioner is reversed, and the matter is REMANDED for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g); and
3. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Juan Carlos Parra and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 30, 2023**

UNITED STATES MAGISTRATE JUDGE